**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**

| | |
|---|---|
| MARIA AMARILLAS, | DOCKET NUMBER |
| Appellant, | DE-0432-23-0087-I-2 |
| v. | |
| DEPARTMENT OF JUSTICE, | DATE: June 8, 2026 |
| Agency. | |

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

Samuel Ballard, Esquire, Houston, Texas, for the appellant.

Patrick D. Gregory, Oakdale, Louisiana, for the agency.

**BEFORE**

Henry J. Kerner, Vice Chairman
James J. Woodruff II, Member

**FINAL ORDER**

The agency has filed a petition for review of the initial decision, which reversed the appellant's chapter 43 performance-based removal and found that the appellant established her affirmative defense of disability discrimination based on a failure to accommodate. For the reasons discussed below, we GRANT the agency's petition for review, REVERSE the initial decision's finding that the appellant proved her affirmative defense of disability discrimination based on a

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law. Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions. In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law. *See* 5 C.F.R. § 1201.117(c).

failure to accommodate, and AFFIRM the initial decision's finding that the agency proved its charge of unacceptable performance and that the appellant did not prove her status-based disability discrimination affirmative defense. The appellant's removal action is SUSTAINED.

## BACKGROUND

The appellant was a GS-11 Legal Administrative Specialist (LAS) for the agency's Executive Office for Immigration Review. *Amarillas v. Department of Justice*, MSPB Docket No. DE-0432-23-0087-I-1, Initial Appeal File (IAF), Tab 6 at 21. As part of the appellant's LAS duties, she was responsible for, among other things, maintaining Records of Proceeding and other agency record systems, processing motions in a timely fashion, closing cases, and entering adjournment codes. *Id.* at 139. Every 6 months, the LASs were rotated to a different judge to gain experience working with each judge. *Amarillas v. Department of Justice*, MSPB Docket No. DE-0432-23-0087-I-2, Appeal File (I-2 AF), Tab 21, July 26, 2023 Hearing Transcript at 26-27 (testimony of Supervisory LAS I.Y.). Some of the agency's judges worked on-site, while others worked entirely remotely. *Id.* at 63.

Initially, in October 2020, the appellant began her employment as a GS-9 LAS, and Supervisory LAS I.R. was the appellant's first-line supervisor from October 2020 through September 2021. IAF, Tab 10 at 39-40; I-2 AF, Tab 22, July 27, 2023 Hearing Transcript (HT-2) at 72 (testimony of Supervisory LAS I.R.). In September 2021, the appellant received a "successful" rating on her 2021 annual performance appraisal, although Supervisory LAS I.R. noted some concerns with her performance. IAF, Tab 10 at 39-40. In October 2021, the appellant was promoted to a GS-11 LAS. *Id.* at 41. Beginning in October 2021, Supervisory LAS I.Y. was the appellant's first-line supervisor, and a Court Administrator was her second-line supervisor. HT-2 at 5 (testimony of

Supervisory LAS I.Y.); I-2 AF, Tab 23, August 7, 2023 Hearing Transcript (HT-3) at 56 (testimony of the appellant).

From October through March 2022, the appellant's first-level supervisor counseled her on various occasions about her performance. *See, e.g.*, IAF, Tab 6 at 160, 162-63, 165-68, 174, 186, 189, 199, 201. In the wake of those performance problems, on March 10, 2022, the appellant emailed her supervisors and requested a reasonable accommodation to "stay with [her] current judge or be placed with an on[-]site judge." IAF, Tab 10 at 50. That same day, she submitted a reasonable accommodation request form explaining, among other things, that her medical condition was aggravated by the "constant turn over by management who reassigns [her] judges." IAF, Tab 11 at 15. The appellant also provided an April 19, 2022 note from her psychiatrist to support her reasonable accommodation request. IAF, Tab 10 at 13.

In April 2022, the appellant's supervisors rotated her to work with an on-site judge, Judge L.S.W. IAF, Tab 6 at 105. On April 22, 2022, the appellant's first-level supervisor issued her a mid-year progress review, which was unsuccessful in Critical Element 1 (Communication), Critical Element 3 (Accountability), and Critical Element 6 (Data and Document Integrity). *Id.* at 157. On April 27, 2022, the agency denied the appellant's accommodation request based on its determination that it was "not [an] appropriate accommodation" and offered her alternative accommodations of various computer applications and functions, a large wall calendar, refresher training, and alternative lighting. IAF, Tab 11 at 13-14, Tab 16 at 19.

On May 5, 2022, the appellant's first-level supervisor issued her a 90-day Performance Improvement Plan (PIP) based on unacceptable performance in the three critical elements identified during the mid-year progress review. IAF, Tab 6 at 138-42. On August 12, 2022, the appellant's first-level supervisor informed her that she had not successfully completed the PIP as to Critical Element 1 (Communication) and Critical Element 3 (Accountability). *Id.*

at 309-10. On October 3, 2022, the agency proposed the appellant's removal for unacceptable performance in those two critical elements, pursuant to 5 U.S.C. chapter 43. *Id.* at 129-34. On December 16, 2022, the agency issued a decision removing the appellant, effective that day. *Id.* at 21-33.

The appellant appealed her removal to the Board and raised affirmative defenses of disability discrimination based on her status as disabled and the agency's failure to reasonably accommodate her disability. IAF, Tab 2 at 4, Tab 10. After holding the appellant's requested hearing, the administrative judge issued an initial decision reversing the appellant's removal. IAF, Tab 2 at 2; I-2 AF, Tab 27, Initial Decision (ID) at 2, 32. He found that the agency established its charge of unacceptable performance as to both critical elements.[2] ID at 14-21. He also found that the appellant proved her affirmative defenses of disability discrimination based on the agency's failure to accommodate her but did not prove her affirmative defense of status-based disability discrimination. ID at 20-32. The administrative judge ordered the agency to afford the appellant interim relief if either party filed a petition for review. ID at 34-35.

The agency has filed a petition for review. Petition for Review (PFR) File, Tab 1. The appellant has responded, and the agency has replied. PFR File, Tab 3.

---

[2] Specifically, the administrative judge found that the agency proved by substantial evidence that: (1) OPM approved the agency's performance appraisal system and any significant changes thereto; (2) the agency communicated to the appellant the performance standards and critical elements of her position; (3) the appellant's performance standards are valid under 5 U.S.C. § 4302(c)(1); (4) the appellant's performance during the appraisal period was unacceptable in one or more critical elements; (5) the agency warned the appellant of the inadequacies in her performance during the appraisal period and gave her an adequate opportunity to demonstrate acceptable performance; and (6) after an adequate improvement period, the appellant's performance remained unacceptable in at least one critical element. ID at 14-21 (citing *Lee v. Department of Veterans Affairs*, 2022 MSPB 11, ¶ 15).

**DISCUSSION OF ARGUMENTS ON REVIEW**

<u>We decline to dismiss the agency's petition for review for failure to afford the appellant interim relief.</u>

In its petition for review, the agency explains that it intended to comply with the administrative judge's interim relief order and that it canceled the appellant's removal and restored the appellant to her GS-11 LAS position. PFR File, Tab 1 at 6. The agency further alleges that it inquired, through the appellant's attorney at the time, whether the appellant intended to return to duty with the agency; that, as of the filing of the petition for review, she had not reported for duty or informed the agency of her intent to do so; and that it believes she is now employed at another agency. *Id.* In response, the appellant does not argue that the agency failed to comply with the interim relief order or that the agency's petition for review should be dismissed; instead, she characterizes the agency's statements about interim relief as "not germane" to the agency's petition for review.[3] PFR File, Tab 4 at 6.

If, as here, the initial decision grants an appellant interim relief, any petition for review filed by the agency must be accompanied by a certification that the agency has complied with the interim relief order either by providing the required interim relief or by satisfying the undue disruption requirements of 5 U.S.C. § 7701(b)(2)(A)(ii) and (B). 5 C.F.R. § 1201.116(a); *see Stewart v. Department of Transportation*, 2023 MSPB 18, ¶ 7. An appellant may challenge an agency's certification of compliance with the interim relief order, and an agency's failure to establish compliance may result in the dismissal of its petition. 5 C.F.R. § 1201.116(c); *see Stewart*, 2023 MSPB 18, ¶ 7. Ultimately, the Board will exercise its discretionary authority to dismiss an agency's petition for review for failure to provide interim relief in light of all the relevant facts and circumstances. *Stewart*, 2023 MSPB 18, ¶ 12. Chief among these considerations

---

[3] The appellant also does not deny the agency's statement that it believes that the appellant is employed by another agency.

is whether the agency undertook good faith, diligent, and competent efforts to satisfy its interim relief obligation. *Id.*

In the instant case, the agency did not provide a specific certification of interim relief, but it did provide a description of its efforts to comply with the interim relief order, including stating that it had cancelled the removal action and restored the appellant to her position. PFR File, Tab 1 at 6. The appellant has not contested the agency's provision of interim relief and has not responded to the agency's legitimate questions about the appellant's status. PFR File, Tab 4 at 6. Thus, because the agency has undertaken good faith efforts to satisfy the interim relief order by canceling the removal action and reinstating the appellant and the appellant has chosen not to respond to the agency's requests for information about her availability to return to duty during the interim relief period, we decline to dismiss the petition for review.

The administrative judge erred in finding that the appellant proved her affirmative defense of disability discrimination under a reasonable accommodation theory.

As discussed above, the administrative judge found that the agency established its charge of unacceptable performance as to both critical elements and that the appellant did not prove her affirmative defense of status-based disability discrimination. ID at 14-20, 30-32. The parties do not dispute these findings, and we discern no basis to disturb them. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 106 (1997) (stating that the Board will not disturb an administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions on issues of credibility); *Broughton v. Department of Health and Human Services*, 33 M.S.P.R. 357, 359 (1987) (same). Thus, the sole issue on review is whether the appellant established her affirmative defense of disability discrimination based on a failure to accommodate. For the following reasons, we find that she did not.

To establish that she was denied a reasonable accommodation, an appellant must show that: (1) she is an individual with a disability, as defined by 29 C.F.R. § 1630.2(g); (2) she is a qualified individual with a disability pursuant to 29 C.F.R. § 1630.2(m); and (3) the agency failed to provide her with a reasonable accommodation. *Miller v. Department of the Army*, 121 M.S.P.R. 189, ¶ 13 (2014). An agency is required to make reasonable accommodation to the known physical and mental limitations of an otherwise qualified individual with a disability unless the agency can show that accommodation would cause an undue hardship on its business operations. *Id.*; 29 C.F.R. § 1630.9(a).[4]

The agency reasserts on review that the appellant is not entitled to the accommodation of her choice, but in any event the agency effectively "informally" granted the appellant's accommodation request when it allowed the appellant to work with one judge and no longer participate in the 6-month rotation. PFR File, Tab 1 at 9-11. The agency also argues that the appellant's performance-based removal was warranted because the appellant's performance problems predated her reasonable accommodation request and she has not argued or established that the 6-month rotation had a negative effect on her performance. PFR File, Tab 1 at 12-13. The administrative judge found that the appellant was not accommodated because she did not stay with one judge after she requested her accommodation and that the denial of her request coincided with her performance decline. ID at 28, 30. We disagree with the administrative judge and conclude that the appellant did not prove that she could successfully perform in her position or a vacant funded job even with a reasonable accommodation.

A claim of disability discrimination based on an agency's failure to reasonably accommodate that disability requires that the individual be "qualified." *Haas v. Department of Homeland Security*, 2022 MSPB 36, ¶ 28. A qualified individual with a disability is one who "can perform the essential

---

[4] On review, neither party disputes, and we decline to disturb, the administrative judge's finding that the appellant is an individual with a disability. ID at 22.

functions of the . . . position that such individual holds or desires" with or without reasonable accommodation. 42 U.S.C. § 12111(8); *Haas*, 2022 MSPB 36, ¶ 28; 29 C.F.R. § 1630.2(m). To be "qualified," the employee must satisfy "the requisite skill, experience, education and other job-related requirements" of the job. 29 C.F.R. § 1630.2(m). As we observed above, the parties do not dispute the administrative judge's determination that the agency proved its charge of unacceptable performance. Nor do the parties contend on review that the duties the appellant was unable to successfully perform during her PIP were anything other than essential functions of her position. We therefore turn to whether the appellant has proven that a reasonable accommodation would have enabled her to perform acceptably.

*The appellant did not prove that she could perform in her position acceptably with a reasonable accommodation.*

As noted above, on March 10, 2022, the appellant emailed her supervisors and requested a reasonable accommodation to "stay with [her] current judge or be placed with an on[-]site judge." IAF, Tab 10 at 50. At the time, the appellant was assigned to Judge L.F. from December 2021 until April 2022. IAF, Tab 6 at 104. She indicated that she had spoken to him and he was willing to remain as her judge. IAF, Tab 10 at 50. That same day, she submitted a reasonable accommodation request form describing her disability as a number of specific psychiatric disorders. IAF, Tab 11 at 15. She requested an accommodation "to stay with my current judge or to be assigned to an on[-]site judge" because her medical condition was aggravated by the constant rotation in the judge to whom she was assigned. *Id.*

In April 2022, the appellant was rotated to work with another on-site judge, Judge L.S.W. IAF, Tab 6 at 105. Following a request for additional information to support her reasonable accommodation request, the appellant provided an April 19, 2022 note from her psychiatrist confirming her diagnosis. IAF, Tab 10 at 13, Tab 16 at 14. Her doctor explained that the appellant "has severe anxiety

and mood lability that are usually affected by the unstable environment of going from one work environment to another" and "has difficulty dealing with the work situation with an off-site judge and would prefer to be assigned to a specific judge on site." IAF, Tab 10 at 13. The doctor expounded that the appellant said "that at her current position and assignment, she is able to complete her tasks and assignments diligently because of the stable nature of her work environment," and the doctor recommended that the appellant "remain in her current position and assignment which would help further stabilize her mental health condition." *Id.* At the hearing, the appellant explained in her testimony that it "takes [her] a little bit [of time] to understand a given judge" and that, with the agency's rotation system, by the time she got used to a judge, the agency reassigned her. HT-3 at 101 (testimony of the appellant).

Despite the appellant's and her doctor's assertions that she had been performing well and felt stable while assigned to Judge L.F., on April 22, 2022, the appellant's first-level supervisor issued her a negative mid-year progress review, which was unsuccessful in three critical areas. IAF, Tab 6 at 146-58. The progress review covered approximately 6 months, the last 4 months of which she was assigned to Judge L.F. *Id.* at 146. Notably, the progress review primarily cited concerns with the appellant's poor communication and performance with her first-level supervisor, managers, and staff members/colleagues and not with judges. For instance, it stated that the appellant failed to respond to requests and emails from her supervisors and managers on approximately 18 occasions, did not communicate with her supervisors and managers when issues arose, and did not update staff members when she covered for them. *Id.* at 157. By contrast, there was only one example of the appellant not responding to a judge's email. *Id.* Similarly, the progress review cited concerns with the appellant's accountability in meeting deadlines and following instructions and procedures given by her first-level supervisor and managers, including when she was covering for another staff member—for instance, failing

to timely cancel a scheduled interpreter after processing a final order. *Id.* at 157-58. Lastly, it cited concerns with the appellant properly maintaining documents and databases, such as not entering and closing motions or closing out cases, among other things, which the agency asserted are duties and procedures that are consistent for all LASs and do not change with rotations. *Id.* at 158; IAF, Tab 11 at 14. Based on the above, we do not discern a connection between the performance problems the appellant attributes to the judge rotations and the documented performance problems involving her permanent first-level supervisor and managers and her consistent LAS duties prior to the PIP.

During a 6-month rotation from April 2022 until the end of September 2022, the appellant was assigned to Judge L.S.W. IAF, Tab 6 at 105, 345; HT-3 at 99-100 (testimony of the appellant). On May 5, 2022, the appellant's first-level supervisor placed her on a 90-day PIP based on her unacceptable performance in the three critical elements discussed above. IAF, Tab 6 at 138-43. During the PIP period, despite being assigned to work for a single on-site judge, the appellant's performance problems related to communications and instructions from her permanent supervisors and managers and her consistent LAS duties continued, as evidenced by her first-level supervisor's weekly PIP meeting notes and documents. For instance, the appellant did not cancel interpreters or update an address properly; did not follow a supervisor's instruction and, as a result, miscommunicated the start time for a hearing, which caused a delay for all courtrooms and impacted scheduled interpreters; and improperly handled a priority filing. IAF, Tab 6 at 216, 234, 238, 313, 370. Additionally, the appellant ignored a direct request from her first-level supervisor to acknowledge receipt of her emails, lacked candor when communicating to her first-level supervisor that she had spoken to Judge L.S.W. about an issue when she had not, did not follow up with her first-level supervisor concerning a missing document or properly address the issue, "forgot" a pending motion to dismiss because she did not enter it in the agency system, did not read emails from management, did not arrive to

court sufficiently in advance, and was uninformed about an agency process despite having received training on it by her supervisors. *Id.* at 242-43, 254, 269-70, 280, 285, 303, 354.

Thus, on August 12, 2022, shortly after the end of the PIP, the appellant's first-level supervisor informed her that she had not successfully completed the PIP as to Critical Element 1 (Communication) and Critical Element 3 (Accountability). *Id.* at 309-10. After the conclusion of her rotation with Judge L.S.W. at the end of September, the agency proposed the appellant's removal in October 2022 for unacceptable performance in those two critical elements, pursuant to 5 U.S.C. chapter 43. *Id.* at 129-34. Thus, we agree with the agency that the appellant was essentially granted her accommodation request to stay with one on-site judge and not rotate throughout the relevant period at issue in the proposed removal, which included the entirety of the 90-day PIP period. During that time, the appellant was nevertheless unable to perform the essential functions of her position.

Moreover, we agree with the agency that the appellant has not explained how not being assigned to a new judge every 6 months would have resulted in improved performance on the problems cited in her proposed removal, such as lacking candor in her communications with her supervisors, failing to report for court duty as scheduled, failing to timely cancel scheduled interpreters, failing to respond to or communicate with her first-level supervisor, failing to process an order, improperly deleting documents, and not entering motions in the agency's records system. *Id.* at 131-33; PFR File, Tab 1 at 12-13. Even if we did not consider the matters cited in her proposed removal that concerned her communications or issues with judges, as explained above, the majority of the appellant's performance problems leading up to the PIP, during her PIP, and in her proposed removal involved problems with communications and instructions from her permanent supervisors and managers and expectations and duties that remained consistent for all LASs regardless of rotations. *Id.* Notably, the

appellant did not appear to have serious performance or communication issues with Judge L.S.W., to whom she was assigned during the PIP period. To the contrary, the appellant testified that Judge L.S.W. was happy with her performance and communication and, in May 2022, emailed the appellant's first-level supervisor indicating the same. IAF, Tab 6 at 105; HT-3 at 169-71 (testimony of the appellant). Accordingly, we do not discern a connection between the judge rotations and the documented performance problems at issue in the appellant's removal.

In finding that the appellant was "qualified," the administrative judge relied on her 2021 performance appraisal, in which she received an overall rating of "successful." ID at 23; IAF, Tab 10 at 39-40. He acknowledged that although the appellant was a GS-9 during that appraisal period, her duties were essentially the same as those she performed in her GS-11 position at the time she was removed. ID at 23. However, we disagree with the administrative judge's finding that the appellant has established that she is "qualified."

The administrative judge correctly acknowledged elsewhere in his decision that the appellant's performance problems began in her first year with the agency, as documented in that 2021 appraisal. ID at 2. Specifically, she was advised to seek additional training, be more attentive when entering and processing documents and filings in the appropriate "agency file," and to ask management for help when she did not know an answer. *Id.* at 39, 41. Her supervisor also stated that the appellant "needed periodic supervision from management to promptly address problems in order to prevent delays." *Id.* at 41. Indeed, the administrative judge specifically credited the testimony of the appellant's then-first-level supervisor, Supervisory LAS I.R., stating that if he had known the extent of the appellant's performance problems at the time, he would have done more to prevent her October 2021 promotion. ID at 2-3; HT-2 at 70 (testimony of Supervisory LAS I.R.). The administrative judge also credited Supervisory LAS I.R.'s testimony that, during the appellant's first year, the workload was

diminished in part due to the COVID-19 pandemic; however, when the appellant began her second year in October 2021 and the workload increased, the appellant's performance problems "started to come to light . . . in greater numbers." ID at 2-3; HT-2 at 70-79 (testimony of Supervisory LAS I.R.). Indeed, the administrative judge concluded that the appellant's unacceptable performance in two critical elements prior to and during the PIP period justified the appellant's placement on a PIP and her removal, which he found was supported by substantial testimonial and documentary evidence. ID at 3-5, 15. As established above, the appellant does not specifically challenge that finding on review, and we decline to revisit it. Thus, we find that the appellant has failed to show that she could perform the essential functions of the position she held or that there was a reasonable accommodation that would have enabled her to do so.

Lastly, the appellant has not identified a vacant position that she desires. *See Haas*, 2022 MSPB 36, ¶ 30 (determining that an appellant failed to prove he was a qualified individual when he did not identify an alternative position that he desired). Because we find that the appellant failed to establish that she is a qualified individual with a disability, the appellant necessarily failed to prove her affirmative defense of disability discrimination based on the agency's failure to reasonably accommodate her. Therefore, for the foregoing reasons, we reverse the administrative judge's finding that the appellant proved her affirmative defense of disability discrimination based on the agency's failure to reasonably accommodate her. Accordingly, the appellant's removal is sustained.

## NOTICE OF APPEAL RIGHTS[5]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of

---

[5] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular

relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any requirement of prepayment of fees, costs, or other security. *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues. 5 U.S.C. § 7702(b)(1). You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision. 5 U.S.C. § 7702(b)(1). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C. 20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C. 20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**. This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D). If so, and your judicial petition for review "raises no challenge to the Board's disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court

of appeals of competent jurisdiction.[6] The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision. 5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[6] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction.  The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Gina K. Grippando*

FOR THE BOARD:                    _____
                                  Gina K. Grippando
                                  Clerk of the Board

Washington, D.C.